IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ELIAS THEDFORD,

          Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

No. C14-3042-MWB

**REPORT AND
RECOMMENDATION**

———————————

Plaintiff Elias Thedford seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Thedford contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I.  BACKGROUND

Thedford was born in 1962 and completed the eleventh grade. AR 231, 293. He has past relevant work as a construction worker, laborer and fence installer. AR 294. Thedford filed his applications for DIB and SSI on March 7, 2012, alleging a disability onset date of November 1, 2004. AR 237-45. His applications were denied initially and on reconsideration. AR 85-86. He then filed a request for hearing before an Administrative Law Judge (ALJ). AR 178-79. On June 19, 2013, a hearing was held

before ALJ David G. Buell during which Thedford and a vocational expert (VE) testified. AR 35-82. On July 19, 2013, the ALJ issued a decision in which he found that Thedford was not disabled. AR 11-27. Thedford filed a request for review with the Appeals Council, which was denied on March 21, 2014. AR 3-8. The ALJ's decision thus became the final decision of the Commissioner. AR 3-5; 20 C.F.R. §§ 404.981, 416.1481. On June 3, 2014, the Appeals Council granted Thedford's request for an extension of time to file a civil action. AR 1-2.

Thedford filed a complaint (Doc. No. 4) in this Court on July 9, 2014, seeking review of the ALJ's decision. This matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues and the matter is now fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

2

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At

Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

(2)    The claimant has not engaged in substantial gainful activity since November 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: degenerative disc disease of the cervical spine, chronic chest wall pain, and obesity (20 CFR 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally stoop, crouch, kneel, and crawl and never climb ladders, ropes, or scaffolds. Additionally, the claimant cannot perform any overhead reaching or lifting with either upper extremity.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on October 28, 1962, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

(8)     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 14-27.

## IV.     THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Thedford contends that the ALJ's decision is not supported by substantial evidence because (a) the ALJ made an erroneous RFC assessment, thereby presenting the VE with an incomplete hypothetical, and (b) the ALJ did not correctly assess his credibility. I will address each argument separately.

### A.    Did the ALJ make an erroneous RFC assessment?

#### 1.    Applicable standards

The claimant's RFC is what the claimant can still do despite his physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant has the burden to establish his RFC. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart,* 359 F.3d 972, 976 (8th Cir. 2004). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The RFC must be based, not only on medical evidence, but on all relevant evidence in the record including medical records, observations of treating physicians and others and the claimant's description of his limitations. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). The court must determine whether "the

quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion." *Masterson*, 363 F.3d at 736. Even though the RFC is based on medical sources, it is ultimately an administrative determination reserved to the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

### 2. *Res judicata*

Thedford contends that the ALJ failed to credit all of his limitations and that the evidence the ALJ cited was inconsistent with the evidence of record. Doc. No. 19 at 7. In support of his argument, he cites to medical evidence pre-dating 2010. *Id.* at 10-12. However, Thedford previously filed for disability benefits in 2009 and alleged the same onset date of November 1, 2004. That application was denied on March 2, 2010. AR 14.

A claimant may not use evidence from an earlier proceeding to support a present claim for disability. *Robbins v. Sec'y of Health & Human Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990). The claimant must present new evidence to show that after the date of the prior determination, his or her physical conditions changed. *Id.* If the evidence only goes to "establish the same claim [that was] earlier denied," it is not sufficient to show the claimant is disabled. *Bullyan v. Heckler,* 787 F.2d 417, 420 (8th Cir. 1986). The Eighth Circuit Court of Appeals has explained:

> Res judicata bars subsequent applications for SSDI and SSI based on the same facts and issues the Commissioner previously found to be insufficient to prove the claimant was disabled. *Robbins v. Sec'y of Health & Human Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990) (per curiam); *Janka v. Sec'y of Health, Educ. & Welfare*, 589 F.2d 365, 367 (8th Cir. 1978); *see generally* 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1). If res judicata applies, "the medical evidence from the initial proceeding cannot be subsequently reevaluated." *Bladow v. Apfel*, 205 F.3d 356, 360 n. 7 (8th Cir. 2000).
>
> Res judicata only precludes subsequent applications for SSDI and SSI if the claimant "has not presented any new evidence that … [her] condition

changed or deteriorated" since the prior proceeding. *Robbins*, 895 F.2d at 1224. New evidence includes both facts and issues that differ from the facts and issues of concern at the prior proceeding, *Janka*, 589 F.2d at 367, as well as evidence that was not part of the record in the prior proceeding, *Bladow*, 205 F.3d at 361 n. 8 (treating a medical report dated before the ALJ's decision in the prior proceeding as new evidence because it was not part of the prior record). Especially in the context of a progressive disease or degenerative condition, evidence that is offered as proof of a disability, and not found persuasive by an ALJ in a prior proceeding, may be considered in a subsequent proceeding in combination with new evidence for the purpose of determining if the claimant has become disabled since the ALJ's previous decision. *See Groves v. Apfel*, 148 F.3d 809, 810–11 (7th Cir. 1998) (stating "there is no necessary inconsistency in finding [a claimant] not disabled at time t but disabled at t +1," and thus, there is "no absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits"); *see also Rogers v. Chater*, 118 F.3d 600, 601 (8th Cir. 1997) (noting a claimant generally cannot seek benefits in a subsequent proceeding for any time-period for which the prior proceeding had denied benefits).

*Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 364-65 (8th Cir. 2007) [footnote omitted].

### 3. *The ALJ's decision*

The ALJ determined that Thedford has the RFC to perform light work but can only occasionally stoop, crouch, kneel and crawl, cannot climb ladders, ropes or scaffolds and cannot perform any overhead reaching or lifting with either upper extremity. AR 18. In making these findings, the ALJ applied the res judicata doctrine to dismiss Thedford's request for a hearing with regard to any period of time preceding March 2, 2010, the date of the last decision. AR 14-15. The ALJ noted that any discussion of evidence before that date was limited to the assessment of Thedford's credibility. AR 15. That preexisting evidence shows a history of emergency room visits, treating nurse practitioner notes and physical therapy notes establishing treatment for chronic chest pain. AR 20. It also establishes the presence of degenerative disc disease. AR 21. Because

Thedford did not appeal the March 2, 2010, determination, the ALJ found that the relevant time period for Thedford's current DIB claim is March 3, 2010, through March 31, 2010 (the date last insured). AR 15. By contrast, the relevant time period for Thedford's SSI claim is March 7, 2012 (the date he filed his application) through July 19, 2013 (the date of the ALJ's decision). *See* 20 C.F.R. § 416.335.

The ALJ considered physical therapy notes and treatment notes from Jeffrey Luna, M.D., beginning in 2012. He afforded little weight to an opinion Dr. Luna provided in 2013 because of inconsistencies with Dr. Luna's own treatment notes and other medical evidence of record. AR 21, 24. The ALJ also addressed notes from a nurse practitioner, considered medical evaluations provided by Joseph D. Smucker, M.D., and afforded some weight to the opinions of state agency medical consultants. AR 23, 25. Ultimately, the ALJ concluded that while the objective medical evidence supports a finding of some limitations in Thedford's ability to work, he could still perform light work with the additional limitations stated above. AR 18, 25.

### 4.    *Analysis*

Because Thedford was found to be not disabled prior to March 2, 2010, the question is whether his condition deteriorated after that determination to the point that he became disabled. Thedford contends that the ALJ failed to incorporate all of his proven limitations in the RFC. For example, he argues that the medical evidence regarding his spine impairments and chest wall pain shows that he could not perform any work at the light level. Doc. No. 19 at 9. Thedford does not take issue with the weight the ALJ assigned to any of the medical opinions, but argues that the medical evidence shows limitations in using his upper extremities for lifting, carrying, forward reaching and pulling, along with symptoms of pain that preclude all work activity. Doc No. 19 at 13. Thedford also argues that the ALJ's RFC limitations for light work is inconsistent with

the Commissioner's definition of light work because he is unable to perform the necessary "pushing or pulling of arm or leg controls." Doc. No. 19 at 9.

*The DIB relevant time period (March 3, 2010 - March 31, 2010).* The only evidence pertaining to this time period consists of physical therapy notes and physical examinations from a treating nurse practitioner pertaining to Thedford's back and neck pain. Those treatment notes indicate that Thedford was receiving physical therapy for his neck and had some tenderness in his back, arms and thighs. AR 1000. An x-ray presented normal findings and the nurse practitioner encouraged him to continue with physical therapy and to exercise on a regular basis. *Id.*

Thedford began an initial round of physical therapy on March 12, 2010. AR 1140. He indicated on the intake form that while he experienced constant pain, it did not interfere with this sleep or with his life and he managed the pain through rest and medication. AR 1138. He reported that he could get around in his home and go up and down stairs. *Id.* He was discharged from physical therapy on April 27, 2010. AR 1136, 1145-46. By that date he was able to lift and carry, demonstrated good body mechanics and had good potential to tolerate work. AR 1136, 1152. Though the pain was unchanged, strength, mobility, range of motion and function all improved. AR 1152. He met the physical therapy goals and received maximum benefit. *Id.*

*The SSI relevant time period (March 7, 2012 – July 19, 2013).* Thedford first began seeing Dr. Luna on February 20, 2012, just before the beginning of the relevant SSI time period. AR 1266. In that first examination, Dr. Luna diagnosed degenerative disc disease with moderate to severe stenosis bilaterally but found that Thedford was fully ambulatory and had a supple neck. AR 1267. Thedford reported that vigorous work aggravated the pain but rest relieved it. *Id.* Dr. Luna recommended medication and physical therapy. *Id.* On March 16, 2012, Dr. Luna noted that Thedford's symptoms improved with physical therapy and Thedford stated that he was doing "pretty well"

overall. AR 1265. Dr. Luna then recommended "continued nonoperative management" of his symptoms. AR 1265.

A follow-up appointment on May 10, 2012, indicated "no progressive weakness or numbness in both upper and lower extremities." AR 1264. Thedford continued to have neck pain despite physical therapy, but remained fully ambulatory. *Id.* Thedford saw Dr. Luna again in December 2012. AR 1510. Dr. Luna noted that Thedford missed two clinic follow-up appointments but remained fully ambulatory without any assistive device and had a supple neck. *Id.* However, Thedford still had tenderness and Dr. Luna recommended surgery. *Id.*

During the same time period, Thedford attended a pain clinic and was treated by Robert Rossi, M.D. AR 1186. He was treated for neck, back and shoulder pain but was reluctant to proceed with injection treatment. AR 1186, 1376-77. Dr. Rossi noted ongoing issues with pain that worsened with overhead lifting. AR 1193. Thedford was advised about trigger point injections to help with the pain, but he was not interested in having them done. AR 1186, 1264. Instead, he wanted to continue with medication because he felt like he was getting some relief. AR 1186. Dr. Rossi noted that Thedford would benefit from physical therapy. *Id.*

Notes from a second round of physical therapy between February 27, 2012, and April 26, 2012, indicate that Thedford felt better after therapy, though he still had high pain levels. AR 1209. While he indicated little improvement in range of motion and pain levels, the treatment notes stated that his compliance with physical therapy was poor. AR 1210. Thedford was absent multiple times and when he did arrive for his appointments he was usually late. AR 1210. He then started another round of physical therapy in August 2012. AR 1398. Though he still presented with chronic pain, the physical therapist noted that he benefited from physical therapy. AR 1399. However, his compliance was still poor. AR 1401, 1408.

In September 2012 Thedford saw a nurse practitioner, who noted ongoing cervical pain and numbness but reported that both symptoms decreased with rest, heat and physical therapy. AR 1739. Hydrocodone worked well but the pain worsened with bending and lifting and Thedford could only sleep on his stomach. *Id.* Thedford again refused steroid injection treatment. AR 1740. He was discharged in October 2012 for noncompliance after cancelling three appointments, missing four and arriving late at others. AR 1731.

In March 2013, Thedford was admitted to the emergency room for abdominal pain. AR 1645. A physical examination revealed a normal range of motion for the neck and back with no tenderness. AR 1648. The following month Thedford met with Dr. Smucker. AR 1584. He reported persistent neck and back pain with mild to moderate difficulty in walking, lifting, climbing and performing daily activities. AR 1585. Dr. Smucker noted that he had limited extension and rotation bilaterally, but he did not appear to be in distress, could walk on his toes and his upper and lower neurological extremities were intact. AR 1587.

***Dr. Luna's Opinion.*** Dr. Luna completed a physical medical source statement in May 2013. AR 1749-54. The ALJ declined to give controlling weight to that opinion. AR 24. First, the ALJ correctly noted that the opinion contradicts itself, as Dr. Luna reported both (a) that Thedford could stand or walk for less than a total of two hours in an eight-hour work day but (b) would need to walk around every fifteen minutes for ten minutes at a time. AR 24, 1750-51. As the ALJ pointed out, this would amount to well over two hours of walking during an eight-hour work day. AR 24.

Second, the ALJ explained that Dr. Luna's opinion included findings that had no support in Thedford's medical records. For example, Dr. Luna listed multiple factors that precipitated pain, including changing weather, fatigue, stress and movement or overuse. AR 1750. As the ALJ noted, however, nothing in Dr. Luna's treatment notes suggests that weather was a precipitating factor. AR 24. Moreover, Dr. Luna stated that

Thedford can "never" climb stairs, *id.*, but the medical evidence and Thedford's own testimony indicates otherwise. AR 72-73, 1585.

A treating physician's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Based on the inconsistencies noted above, the ALJ found that Dr. Luna's opinion was not entitled to controlling weight and, instead, afforded it little weight. AR 24-25. Thedford does not argue that Dr. Luna's opinion should have been given controlling weight. I find that the ALJ provided good reasons, supported by substantial evidence, for giving little weight to that opinion.

*The "Light Work" Definition*. "Light work" is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A job in this category may require walking, standing, or sitting with some pushing and pulling of arm or leg controls. *Id.* "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." *Id.* Thedford argues that because the ALJ found him to be incapable of overhead reaching or lifting, he does not fit within the definition of light work.

As the Commissioner points out, however, the ALJ did not find that Thedford is unable to perform *any* lifting or reaching. Instead, the ALJ restricted Thedford to no *overhead* lifting or reaching. AR 18. The ALJ included this limitation in his hypothetical questions to the VE. AR 77. The VE testified that the "light work" definition does not speak to lifting in any particular direction. *Id.* The VE then testified that there are light work jobs that can be performed without overhead reaching or lifting. AR 77-78.

I find that there is no contradiction between the ALJ's finding that Thedford can perform light work and his finding that Thedford cannot perform overhead reaching or

lifting. Had the ALJ found that Thedford can perform no lifting or reaching at all, then Thedford could not possibly perform light work. However, the ALJ's finding that Thedford can perform all types of reaching and lifting other than overhead reaching and lifting does not automatically disqualify Thedford from light work. Based on the VE's testimony, the ALJ was entitled to find that it is possible to perform light work without overhead reaching and lifting.

Having carefully reviewed the record, I find that the ALJ's RFC findings appropriately accounted for all of the exertional limitations that are supported by substantial evidence on the record as a whole. Because the ALJ included these limitations in his hypothetical questions to the VE, the VE's testimony constitutes substantial evidence that there is other work Thedford can perform in light of his RFC, age, education and work experience. AR 77-78. *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) ("A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments."). As such, I do not recommend reversal or remand based on the ALJ's RFC findings or the VE's testimony.

## B.     *Did the ALJ properly determine Thedford's credibility?*

The ALJ found that Thedford's medically determinable impairments could be expected to cause his alleged symptoms, but his statements about the severity of those symptoms were not entirely credible. AR 20. Thedford contends that the ALJ failed to comply with the applicable standards and case law in making this finding.

### 1.     *Applicable standards*

The ALJ must consider the claimant's own description of his pain when determining a claimant's limitations. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). The ALJ is not required to believe or afford significant weight to subjective

complaints if there are inconsistencies in the record. *Ingram v. Chater*, 107 F.3d 598, 605 (8th Cir. 1997). "While 'an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary.'" *Baker v. Barnhart*, 457 F.3d 882, 892-93 (8th Cir. 2006) (quoting *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002)).

"The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints." *Masterson,* 363 F.3d at 738. He must show that he considered all the evidence in the record. *Id.* The absence of evidence is one of many factors the ALJ may use to evaluate credibility. *Id.* Others include the claimant's daily activities, subjective evidence of duration, frequency and intensity of pain, precipitating or aggravating factors, medication side effects, effectiveness and dosage and the claimant's functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

It is not enough for an ALJ to make a "single, conclusory statement" saying he considered the allegations, or that the claimant's allegations are not credible. SSR 96-7p, 1996 WL 374186, at *2. Nor may the ALJ simply recite the factors he must consider. *Id.* He must give "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight [he] gave to the individual's statements and the reasons for that weight." *Id.; see also Ghant v. Bowen*, 930 F.2d 633, 637 (8th Cir. 1991). The credibility of a claimant is primarily for the ALJ to decide, but the court must determine whether the ALJ considered all the evidence and if that evidence so contradicts the subjective complaints that the ALJ could discount the claimant's testimony. *Id.* at 738-39. The court should not "disturb the decision of an

ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

### 2.    *The ALJ's decision*

The ALJ referenced the relevant factors and stated that he "considered the claimant's subjective allegations" and gave careful consideration to "all avenues presented that relate to such matters" including allegations of pain, aggravating factors, medications, treatment, functional restrictions, and Thedford's daily activities.  AR 19. He reiterated Thedford's subjective complaints but stated that "after careful consideration of the evidence . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ."  AR 20.

The ALJ reviewed medical evidence from the first disability determination establishing that Thedford sought treatment for chronic chest wall pain.  AR 20.  The ALJ then cited inconsistencies found in the physical therapy treatment notes between Thedford's alleged pain levels and his ability to take care of himself independently.  AR 21.  The ALJ found that Thedford's alleged functional limitations are not consistent with his presentations during physical examinations, AR 25, and that the longitudinal medical history does not provide strong support for his allegations.  AR 20.  The ALJ also determined that Thedford's reported activities of daily living show that his physical impairments do not prevent him from performing a wide range of activities and that his noncompliance with physical therapy suggests that the severity of his symptoms is not as debilitating as alleged.  *Id.*

### 3.    *Analysis*

Thedford argues that the ALJ failed to fully explain his reasons for discounting the credibility of his subjective complaints.  Doc. No. 19 at 15.  He contends that the medical evidence reveals ongoing pain symptoms and multiple attempts to treat those

symptoms. *Id*. He claims a two-to-three year history of neck and back pain with extensive numbness and multiple medications. AR 1584. In his pain questionnaires, Thedford reported that any physical activity or movement makes the pain in his chest, shoulder and back worse. AR 321-24. In his disability report he stated that he cannot walk or stand very long, is unable to lift or do chores, cannot lift anything over his head and that his doctor does not want him to work at all. AR 368, 372. He claims therapy has not brought relief, that he received cortisone injections for his neck and has discussed surgery with his doctor. AR 373.

Thedford cites to multiple portions of the record indicating that he experienced pain from 2008 to 2013. This evidence suggests that his pain flares up after he does extensive work such as shoveling snow by hand or tearing down fences. AR 535, 990, 1003. Thedford did receive physical therapy and has taken multiple medications. AR 1264. The presence of neck and back pain is not in doubt. The issue is whether his statements about its intensity are completely credible.

Evidence that activities exacerbate pain weighs in favor of Thedford, but that is one factor among many. *See Baker,* 457 F.3d at 893 (evidence that doing household chores aggravated pain "was just one component of the ALJ's finding that [the claimant's] subjective complaints were not consistent with the record evidence."). Inconsistent statements about the effects of pain is an acceptable reason for discrediting a claimant. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *see also Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (credibility assessment based on specific inconsistencies between subjective complaints and the record as a whole is sufficient). Though Thedford consistently reported the existence of pain, his reports of their intensity were inconsistent. For example, he had previously indicated that pain did not interfere with his life or his sleep. AR 1138. On March 16, 2012, Thedford reported some relief from physical therapy, was taking pain medications and maintained a fully ambulatory gait without an assistive device. AR 22, 1265. On April 19, 2012, Thedford claimed pain kept him

from doing anything at all. AR 1212. But a month later he stated that his pain did not keep him from walking, carrying groceries, visiting people or getting out of the house. AR 1189. In a function report dated May 23, 2012, Thedford stated that he could not stand for a long time. But in the same report he indicated that he went outside every day when the weather was nice, could go shopping with family and did not need any mobility aids. AR 379-84. The ALJ was entitled to consider these inconsistent reports in assessing Thedford's credibility.

The ALJ was also entitled to consider Thedford's activities of daily living, which included preparing simple meals, going outside, watching television and shopping. AR 379-81. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). It was also proper for the ALJ to consider the fact that Thedford was discharged from physical therapy for failure to comply. AR 1731; *see Harwood v. Apfel*, 186 F.3d 1039, 1045 (8th Cir. 1999) (ALJ properly considered the fact that the claimant was discharged from physical therapy for failing to reschedule missed appointments).

Finally, the record supports the ALJ's finding that Thedford's subjective allegations were inconsistent with the medical evidence. As discussed in detail above, during the time periods relevant to his applications Thedford saw numerous health care providers. The treatment notes indicate that medication and physical therapy were beneficial, that Thedford was fully ambulatory and that he declined to proceed with injection treatment for his pain. AR 1186, 1264-67, 1376-77, 1398-99, 1510, 1740. The only opinion evidence that is arguably consistent with Thedford's allegations is the May 2013 opinion of Dr. Luna, which the ALJ properly discredited. The medical evidence simply does not support Thedford's allegation of disabling symptoms.

In short, the ALJ referenced the relevant factors and provided good reasons, supported by the record, for his determination that Thedford's subjective allegations were

not entirely credible. Nothing further was required. I do not recommend reversal or remand based on the ALJ's credibility assessment.

## VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I RESPECTUFLLY RECOMMEND that the Commissioner's determination that Thedford was not disabled be **affirmed** and that judgment be entered against Thedford and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 30th day of July, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE